---

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| ALESSANDRO ROMA, SR., as Administrator of the ESTATE OF DENISE M. ROMA a/k/a DENISE ROMA, individually and as the Natural Guardian of the Infant, ALESSANDRO ROMA, JR., <br><br> Plaintiff, <br> -against- <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | **PLAINTIFF's PROPOSED FINDINGS OF FACT, CONCLUSIONS OF LAW** <br><br> Civil Action <br> Docket No. <br> **13 CV 8390** <br> **Magistrate Judge** <br> **Lisa Margaret Smith** |

---

This wrongful death medical malpractice case was heard by the Court in a bench trial held on November 30, December 1 and December 3, 2015. Plaintiff ALESSANDRO ROMA, SR., as Administrator of the ESTATE OF DENISE M. ROMA a/k/a DENISE ROMA, individually and as the Natural Guardian of the Infant, ALESSANDRO ROMA, JR., ("Plaintiff") was represented by Barry Birbrower, Esq. of the Birbrower Law Firm, P.C., Defendant UNITED STATES OF AMERICA ("Defendant") was represented by Assistant United States Attorney Christopher Connolly, Esq. Having considered the testimony of the witnesses and the evidence admitted at trial, the relevant authorities on the legal issues presented, and the proposed findings of fact and conclusions of law submitted by the parties, the Court now renders the following Findings of Fact and Conclusions of Law.

## BACKGROUND

On March 28, 2011, DENISE ROMA, a 46 year old overweight, hypertensive woman went to see chiropractor MaryLou Veneziali, D.C., for the problem of *"pain upper back radiating around chest, armpits... nausea, L arm numbness, no jaw pain – duration 1 wk; shortness of breath (SOB) with exertion"*. Her blood pressure (BP) was 160/90. Dr. Veneziali, D.C. also noted irregular heartbeat. The chiropractor concluded that patient DENISE ROMA needed to go to the Emergency Room immediately for further evaluation and wrote *"pt. symptoms are consistent with heart"* and she *"referred her to hospital for present condition"*.

That day, following her chiropractor's recommendation to go to the Emergency Department, DENISE ROMA went to Orange Regional Medical Center –Emergency Department (ED) arriving around 1:01 PM. The intake clerk recorded her complaints as follows: "Comments: respiratory distress/chest/arm pain". Her vital signs at 13:02 were: weight 185lbs, height 5'7", Temp 96.6, pulse 87, resp 24, BP 159/99 with 10/10 pain. ER records noted "Pt c/o mid back pain shooting around to left chest. DENISE ROMA was discharged around 17:17 with Percocet and to follow-up with Middletown Community Health Center in two days. The discharge diagnosis was sprain and strain of ribs.

Two days later, Wednesday, March 30, 2011, DENISE ROMA went to the Middletown Community Health Center as instructed by the Emergency Department. Her BP was 151/104. She was only seen by R.G. Douglas Ley PA, physician's assistance. The March 30, 2011 medical note records BP 151/104 never repeated. Her smoking history was noted. No family history was noted. The history of present illness (HPI) was "pain to thoracic back radiating to ribs started 2 weeks ago, went to ED 3/28/11, diagnosed as rib contusion…" Physician's Assistant Ley's diagnosis was thoracic radiculitis and patient DENISE ROMA was discharged on Motrin and Phenergan because she also had an "upset" stomach. No physician evaluated her, no further consideration

was given to her previous history and elevated BP, although Physician's Assistant Ley had to be supervised by a medical doctor, Physician's Assistant Ley never contacted him.

On April 1, 2011, DENISE ROMA had an unwitnessed cardiorespiratory arrest. She was found dead.

An autopsy performed on April 2, 2011, showed DENISE ROMA's cause of death to be multi-vessel coronary artery disease: from moderate to severe atherosclerosis of the circumflex and left anterior descending (LAD) with up to 80% narrowing; with right coronary artery up to 60% narrowed. Cause of death was "hypertensive and atherosclerotic cardiovascular disease".

Plaintiff, who is DENISE ROMA's husband and Administrator of her estate, sued the United States under Federal Tort Claims Act ("FTCA"). Plaintiffs claim that DENISE ROMA's death was caused by the medical negligence of the Middletown Community Health Center. Specifically, plaintiff alleges the physician's assistant was negligent in that he: (1) failed to take a family history; (2) failed to take a proper medical history; (3) diagnosed and treated decedent without doctor supervision in violation of §6542(1)(2) of the Education Law; (4) failed to refer patient to a hospital or medical doctor; (5) failed to understand and appreciate the seriousness of her condition; (6) failed to follow their own rules and regulations regarding high blood pressure; (7) failed to do an EKG; (8) failed to speak to a Emergency Department doctor at Orange Regional Medical Center; (9) failed to secure Emergency Department record before decedent was discharged; (10) failed to do a proper differential diagnosis.

Defendant, the UNITED STATES OF AMERICA denies that its employee was negligent in the manner alleged by plaintiff. It also contends that, if it is found negligent, the United States seeks to allocate fault to Orange Regional Medical Center and Dr. Michael Jefferson.

## FINDINGS OF FACT

1. The Court enters these findings of fact based on a preponderance of the evidence. In assessing the credibility of the witnesses, the Court has considered the source and basis of each witness's knowledge; the ability of each witness to observe; the strength of the witness's memory; each witness's interest, if any, in the outcome of the litigation; the relationship of each witness to either side in the case; and the extent to which each witness's testimony is either supported or contradicted by other evidence presented at trial.

2. Plaintiff ALESSANDRO ROMA, SR. (born on 5/20/1958) was the husband and is the Administrator of the Estate of DENISE ROMA (born on 12/11/1964). They are the parents of ALESSANDRO ROMA, JR. (born 12/27/1997).

3. On March 28, 2011 according to her chiropractor, Dr. Marylou Veneziali, DENISE ROMA was having chest, upper back pain, nausea, left arm numbness and shortness of breath with exertion.

4. The Chiropractor's record states: "*pt. symptoms are consistent with heart*" and she "*referred her to hospital for present condition*". The Chiropractor thought her pain was related to her heart and referred her to Orange Regional Medical Center.

5. DENISE ROMA followed instructions and immediately went to Orange Regional Medical Center.

6. Orange Regional Medical Center misdiagnosed her with rib sprain and referred her to Middletown Community Health Center for follow up in two days.

7. Two days after DENISE ROMA, went to Middletown Community Health Center and was seen by a physician's assistant who accepted Orange Regional's diagnosis as told him by the decedent and ruled out ischemic heart disease without taking

an adequate medical or family history, without obtaining the Emergency Department records, without speaking to a physician at the Emergency Department and without speaking to his supervising doctor.

8. The physician's assistant did not take a history of her pain. When it started, how long the pain lasted, did the pain present on exertion or at rest. These are critical and basic questions to determine if her pain was from acute coronary syndrome, a medical emergency. Physician's Assistant Ley did not ask when she first became nauseous, if he did he would have found she was nauseous before taking the Percocet prescribed by Orange Regional Medical Center, which is another classic sign of an ischemia.

9. The unsupervised physician's assistant misdiagnosed DENISE ROMA's condition.

10. Had Physician's Assistant Ley inquired into DENISE ROMA's family history he would have found her father had a cardiac history with stents placed on two occasions.

11. Had Physician's Assistant Ley inquired into DENISE ROMA's medical history he would have found that her blood pressure was recorded by the chiropractor as 160/90 and at Orange Regional Medical Center initially at 159/99 and that she was experiencing pain with exertion and at rest.

12. Physician's Assistant Douglas Ley failed to acknowledge DENISE ROMA's high blood pressure of 151/104 or appreciate its significance. The Health Center's Guide to Clinical Preventive Series 2009 – Screening for High Blood Pressure (Page – 74) defines high blood pressure as 140/90 or higher.

5

13. Physician's Assistant Ley failed to engage his supervising doctor-physician to participate and assist in the diagnosis of the decedent in violation of Section 6542(1)(2) of the Education Law.

14. Physician's Assistant Ley failed to return her urgently to a Emergency Department.

15. If Physician's Assistant Ley inquired about her medical history, he would have found that her chiropractor thought her chest pain was from her cardiac issues and not muscular skeletal and that she was nauseous, had left arm numbness and shortness of breath with exertion before her Emergency Department visit.

16. A family medical history can identify people with a higher-than-usual chance of having common disorders, such as heart disease and high blood pressure. A family medical history is a record of health information about a person and his or her close relatives. It is a crucial and vital part of any physical examination and not to take a family history or appreciate its significance is a clear departure from minimal standard medical practice for a physician's assistant or any health care professional.

17. "Unstable angina", sometimes referred to as "acute coronary syndrome" represents compromised or reduced blood flow to heart muscle (leading to pain/"cramps" in the heart muscle because of reduced available oxygen) generally caused by narrowing of the coronary arteries and it must be treated as an emergency because it can lead to sudden death.

18. Physician's Assistant Ley's failure to appreciate the clear history, and signs and symptoms, was a departure from appropriate standard medical practice. His failure to treat her, seek timely consultation from his supervisory physician, and to send her back to a hospital for further testing and treatment such as percutaneous coronary intervention, serial ECG monitoring, echocardiography, serial monitoring with ancillary testing, was the significant contributing factor to her cardiac death.

19.     If a physician's assistant or doctor has reason to doubt that he or she has sufficient competence to handle the case, the physician or physician's assistant may be liable for failure to advise the patient to consult a more skillful physician or surgeon. Benson v. Dean, 232 NY 52, 133 NE 125; see annot 35 ALR 3rd 349.

20.     Taking a "proper medical history" is a "crucial element of diagnosis and treatment" and the "failure to elicit all information pertinent to treatment could unquestionably constitute medical malpractice". Bleiler v. Bodnar, 65 NY 2d 65, 72 (1985); D'Elia v. Menorah Home & Hosp. for the Aged & Infirm, 51 AD3d 848 (2d Dept. 2008).

21.     The plaintiff in a wrongful death action is not held to as high a degree of proof as a plaintiff in a personal injury action is entitled to benefit from every favorable inference which can be drawn from the evidence see, Noseworthy v. City of New York, 298 NY 26, 80 NE 2d 744; PJI 1:61.

22.     There is proof that decedent had several factors for cardiac disease and numerous signs and symptoms that should have raised a high suspicion for unstable angina (acute coronary syndrome) that warranted further investigation, diagnosis and treatment. **DENISE ROMA** made complaints to the chiropractor, to the intake clerk at Orange Regional Medical Center and to her husband all strongly indicative of a cardiac condition, two days before she presented to Middletown Community Health Center. The court infers that any complaints and history that **MRS. ROMA** made to them was reported to Physician's Assistant Ley, as held in Gibides v. Powell, 256 AD2d 1091 (4th Dept. 1999). In Gibides, the Appellate Division reinstated plaintiff's complaint based on proof that the plaintiff-decedent had complained to co-workers of her cardiac symptoms weeks before her first heart attack and that a jury could infer that a person experiencing those symptoms would have told her doctor about them as well.

23. This Court applies Gibides v. Powell, 256 AD2d 1091 (4th Dept. 1999) here and the logical inferences that **DENISE ROMA** reported the same history to Physician's Assistant Ley that she reported to Dr. Veneziali of "pain upper back radiating around chest, armpits… nausea, L arm numbness; and shortness of breath (SOB) with exertion" and the intake clerk at the hospital of "chest pain, arm pain and respiratory distress" and her husband that she had chest pain.

24. This Court finds that defendant failed to elicit all information pertinent to treatment. There is no dispute about the importance of gathering relevant facts by way of a proper history.

25. Taking a "proper medical history" is a "crucial element of diagnosis and treatment" and the "failure to elicit all information pertinent to treatment could unquestionably constitute medical malpractice. Bleiler v. Bodnar, 65 NY2d 65, 72 (1985).

26. Although an error of medical judgment will not entail liability, a decision that is without proper medical foundation, that is, one which is not the product of a careful examination, is not to be legally insulated as a professional medical judgment. Bell v. New York City Health and Hospitals Corporation, 90 AD2d 270, 280 (AD2 1982). "Liability … can and should ensure if that judgment was not based upon intelligent reasoning or upon adequate examination so that there has been a failure to exercise any professional judgment". O'Sullivan v. Presbyterian Hospital, 217 AD2d 98, 103 (AD1, 1995), quoting Snow v. State of New York, 98 AD2d 442, 447, affd. 64 NY2d 745.

27. What Physician's Assistant Ley would have known if he took a proper medical history and family history would most certainly lead him to refer the decedent to a hospital, a doctor or cardiologist at a time that her condition was treatable.

28. The defendant was required to take a detailed medical history and family history and the failure to do so is medical malpractice which is a substantial factor in causing her death.

## CONCLUSIONS OF LAW

1. Federal Tort Claim Act's ("FTCA") waiver of immunity is limited to causes of action against the United States arising out of certain torts committed by federal employees acting within the scope of their employment. See United States v. Orleans, 425 US 807, 813 (1976).

2. Under the FTCA, the government is liable "in the same manner and to the same extent as a private individual under like circumstances", 28 U.S.C. § 1346(b)(1). Thus, the Court looks "to state law to resolve questions of substantive liability". Miller v. United States, 463 F 3d 1122 (10th Cir. 2006).

3. In a medical malpractice case, one wrongdoer, cannot escape liability by pointing to the alleged wrongdoing of another. Harding v. Noble Taxi Corp., 182 AD2d 365, 582 NYS2d 1003 (1st Dept. 1992); Datiz v. Shoob, 71 NY2d 867, 527 NYS2d 749 (1988); Ruddy v. Nolan, 37 AD3d 694, 830 NYS2d 308 (2d Dept. 2007).

4. The Court finds that plaintiff has by a preponderance of evidence proved:

(a) That defendant departed from acceptable standard medical practice required of a physician's assistant as required at the time and place of this incident.

(b) That departure was a substantial factor in causing the decedent's death.

5. Plaintiff has proved by a preponderance of the evidence that defendant's departure was a cause of DENISE ROMA's death and the plaintiff's damages.

6. Plaintiff has proved by a preponderance of the evidence that it has, in fact, suffered damages due to defendant's medical negligence.

7. Under New York Law the defendant is not entitled to allocate fault among all negligent actors, including non-parties, such as Orange Regional Medical Center and Dr. Michael Jefferson.

8. The Court finds that the defendant the UNITED STATES OF AMERICA 100% at fault.

9. The Court finds the plaintiff entitled to lost earnings in the amount of $_____.

10. The Court finds plaintiff is entitled to a monetary value to plaintiffs' deprivation of the intellectual, moral and physical training and education that the deceased would have given. PJI 2:320. Which the Court determines is $_____.

11. The Court finds the plaintiff is entitled to the value of lost household services rendered by the decedent to ALESSANDRO ROMA, SR. and ALESSANDRO ROMA, JR., in the amount of $_____.

12. Under FTCA, plaintiffs are not entitled to a separate award of attorneys' fees or costs of suit. See 28 U.S.C. §2678.

13. Under the FTCA, plaintiffs are not entitled to prejudgment interest. See 28 U.S.C. § 2674.

## ORDER

Accordingly, for the foregoing reasons, the Clerk of the Court is directed to enter Judgment against the UNITED STATES OF AMERICA and in favor of plaintiff ESTATE OF DENISE ROMA in the total amount of $_____.

Dated: This \_\_\_\_\_ day of December, 2015.

BY THE COURT:

_____

HON. LISA MARAGRET SMITH, Magistrate

*13 CV 8390 – Magistrate Judge Lisa Margaret Smith*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALESSANDRO ROMA, SR., as Administrator of the
ESTATE OF DENISE M. ROMA a/k/a DENISE
ROMA, individually and as the Natural Guardian
of the Infant, ALESSANDRO ROMA, JR.,

                                                    Plaintiff,

-against-

UNITED STATES OF AMERICA,

                                                    Defendant.

---

PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

---

**BIRBROWER LAW FIRM, P.C.**
*Attorneys for Plaintiffs*
**One Park Place, Suite 200
Peekskill, New York 10566
(914) 737-1020
Fax (914) 737-5311**

---

To:    UNITED STATES ATTORNEY FOR THE SOUTHERN DISTRICT OF NEW YORK
*Attorney for Defendant*

---

Dated: November 13, 2015

                                        **BIRBROWER LAW FIRM, P.C.**
                                        **Attorney for Plaintiffs**
                                        **One Park Place, Suite 200**
                                        **Peekskill, New York 10566**
                                        **(914) 737-1020**